IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

```
IN RE                           )
                                )
JUAN and PAULINE DAVILA,        ) CASE NO. 04-81168-G3-13
                                )
    Debtor,                     )
                                )
                                )
JUAN and PAULINE DAVILA,        ) ADVERSARY NO. 05-8061
                                )
    Plaintiffs                  )
                                )
VERSUS                          )
                                )
OLD CANAL FINANCIAL,            )
                                )
    Defendant                   )
                                )
```

MEMORANDUM OPINION

Came on for trial the Complaint for declaratory relief filed by Juan and Pauline Davila ("Debtors"), Plaintiffs, and the counterclaim by Old Canal Financial ("Defendant"). After consideration of the pleadings, response, evidence and argument of counsel, the court makes the following findings of fact and conclusions of law declaring that the Builder's and Mechanic's Lien Contract dated December 19, 1995, executed by Pauline Davila in favor of Rockwell Builders is invalid, the underlying debt unsecured and subject to discharge. To the extent any findings of fact are construed to be conclusions of law, they are adopted as such. To the extent any conclusions of law are construed to be findings of fact, they are adopted as such.

Debtors filed a Chapter 13 bankruptcy proceeding on July 2, 2004. Defendant filed a Proof of Claim on September 21, 2004 in the amount of $28,765, secured by a Builder's and Mechanic's Lien Contract for improvements made to Debtors' homestead.[1] Debtors contend that the contract is void on its face as it was signed only by Pauline Davila, and not by both Debtors. Debtors request that the court declare the lien invalid because the lien encumbers their homestead and it was not executed by both husband and wife. Plaintiffs also seek actual and punitive damages, attorney's fees and costs.

Defendant claims that Pauline represented herself as "unmarried" in obtaining the loan. Defendant filed a Counterclaim with its Answer (Docket No. 6) alleging that the debt is nondischargeable pursuant to 523(a)(2)(false representations to induce loan) and 523(a)(6)(wilful and malicious injury by signing a false credit application).

Pauline Davila testified that she and her husband, Juan Davila, lived in the home located at 217 North Columbia, Angleton, Texas, and occupied it as their homestead. The homestead was purchased through a General Warranty Deed with Vendor's Lien dated

---

[1] The lien was originally executed in favor of Rockwell Builders who assigned it to Home Owners Mortgage and Equity on December 26, 1995, which assigned it to First National Bank of Keystone ("FNBK") on January 12, 1996. Thereafter, FNBK assigned the lien to First National Bank Association of St. Paul on March 11, 1997, which assigned it to Old Canal Financial on April 12, 2004, effective December 8, 2003.

May 23, 1991 and secured by a Deed of Trust executed the same date by Pauline and Juan Davila.  Plaintiffs' Exhibit Nos. 9 and 10. The Davilas purchased the property from Irvin and Betty Illgen, their neighbors, and made monthly payments in cash.

The parties stipulated to the admission of Juan Davila's deposition, dated February 9, 2006 and March 6, 2006.  Mr. Davila was previously employed as a cement finisher but is currently disabled.  He has suffered four strokes.  Mr. Davila speaks little English and can not read or write the English language.  Mr. Davila speaks Spanish but can read only a little in that language.  In his deposition, Mr. Davila testified that his wife handled the finances and the bills.  He does not have a checking account and testified that he did not know if he had a mortgage on the property.  He testified he did not know anything about his wife obtaining a loan or borrowing any money.

Pauline Davila testified that she did execute documents to obtain a loan to make some repairs to the property.  The evidence was not clear as to whether the money was advanced, or whether any work was begun or completed.  The loan was made for improvements to the homestead.  Mrs. Davila testified credibly that she signed three papers but did not understand what she was signing.  She testified that she was encouraged to enter into the loan by her neighbors.  Mrs. Davila testified that she never

represented herself to be single or divorced. She also testified that she did not sign any of the documents in front of a notary public.

The court finds that Plaintiffs lack financial sophistication. Mr. Davila did not know about the loan but was, at all times, the owner of a one-half undivided interest in the property, which was the Davilas' homestead. Mr. Davila did not sign any of the loan documents. Plaintiffs' Exhibit Nos. 4 - 8. The court notes that on page one of the "Credit Application for Property Improvement Loan" (Plaintiffs' Exhibit No. 5) Mrs. Davila's marital status is reflected as "Unmarried." This credit application is typewritten, and consists of four pages. Mrs. Davila's signature appears on page four. The court finds Mrs. Davila's testimony as to her marital status (married at all relevant times) to be credible. The court finds that Mrs. Davila did not fully understand what she was signing.

Mr. Jeremy Kleedorfer, an assistant Vice President of Recovery for Old Canal Financial, testified that Defendant obtained this loan through the purchase of a portfolio. Mr. Kleedorfer testified that he did not participate in any due diligence in relation to the purchase of the loan portfolio which includes the Davila loan. Mr. Kleedorfer testified that upon inquiry, he found out that no due diligence was performed as to this purchase. Mr. Kleedorfer testified that he was not aware of the claims and

defenses raised by Plaintiffs. He testified that usually loan portfolio purchases include a percentage of non-performing loans. The Defendant acquired its interest in the loan through a series of not less than four assignments. The court finds that Defendant is essentially a servicer of the loan, without much practical knowledge of the portfolio it purchased.

For a lien to attach on a homestead if the property owner is married, the contract must be signed by both spouses. Tex. Prop. Code § 53.254(c). For an original contractor to create a mechanics' lien for new improvements and for renovation or repair work performed on a residential homestead, the Texas Property Code requires that the contract set forth the terms of the agreement, that it be signed by the husband and wife before the work is commenced, and that it be recorded. *See Cavazos v. Munoz*, 305 B.R. 661 (S.D. Tex. 2004). Because homesteads are favored in Texas, courts must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions. *In re Sorrell*, 292 B.R. 276 (Bankr. E.D. Tex. 2002). The court finds that the contract was for improvements of the Plaintiffs' homestead and was not signed by both spouses. The court finds that any lien or security interest that might have been created by the contract is invalid.

A party seeking to except a debt from discharge bears the burden of proof as to each of the elements of nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). Exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start. *Matter of Hudson*, 107 F.3d 355 (5th Cir. 1997).

Section 523(a)(2)(A) excepts from discharge debts to the extent incurred by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Actual fraud is a knowing false representation, with an intent to deceive a creditor, who relies on the representation, and thus sustains a loss. *Matter of Mercer*, 246 F.3d 391 (5th Cir. 2001); citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995).

Section 523(a)(2)(B) excepts from discharge debts to the extent incurred by use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition, on which the creditor reasonably relied, and that the debtor made. Section 523(a)(6) excepts from discharge any debt incurred from "willful and malicious injury by the debtor to another entity of to the property of another entity."

The Supreme Court held that a "willful" injury requires a deliberate or intentional injury, not merely a deliberate or

6

intentional act that leads to injury. This is similar to the requirement for most intentional torts, that the actor intend "the consequences of the act" not simply "the act itself." *Kawaauhau v. Geiger*, 118 S.Ct. 974 (1998).  An injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm.  *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998).

The court finds that Defendant has failed to sustain its burden of proof by a preponderance of the evidence as to the nondischargeability of this debt.  Additionally, exceptions to discharge are strictly construed against a creditor and liberally construed in favor of a debtor.  The court finds this debt to be dischargeable.

In connection with the parties' requests for awards of attorneys' fees and costs, the general rule is that each party to a lawsuit must bear his or her own costs and the prevailing litigant can not collect attorney's fees from the losing litigant. There are five specific exceptions[2] to the general rule, none of which apply to the instant adversary proceeding.  Neither party will be awarded attorney's fees or costs.

---

[2] Attorney's fees are allowed when: 1) they are statutorily authorized; 2) they are contractually provided for; 3) a litigant deliberately disobeyed a court order; 4) a litigant acted in bad faith; and/or 5) a litigant recovers a common fund for the benefit of a group.  *See Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240 (1975).

Based upon the above findings of fact and conclusions of law, the court will enter a separate judgment this same date declaring that the Builder's and Mechanic's Lien purportedly created by that Contract dated December 19, 1995, executed by Pauline Davila in favor of Rockwell Builders, is invalid and the underlying debt is unsecured and subject to discharge.

Signed at Houston, Texas on this 31st day of August, 2006.

*/s/ Letitia Z. Clark*
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE